IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KIM ELDRIDGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-15-695-D |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff, Kim Eldridge, brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration (Commissioner), denying Plaintiff's application for disability insurance benefits (DIB). United States District Judge Timothy D. DeGiusti has referred this matter for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons set forth below, it is recommended the Commissioner's decision be affirmed.

**I. Procedural History**

On April 12, 2011, at fifty-five years of age, Plaintiff protectively filed an application for DIB under Title II of the Social Security Act (SSA) alleging a disability onset date of March 1, 2011. *See* Administrative Record (AR) [Doc. No. 10] 20, 170. The Commissioner denied her claim both initially and upon reconsideration. AR 87, 92, 97. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision January 10, 2014. AR 20-31. The Appeals Council denied Plaintiff's request for review and the decision of the ALJ became the final decision of the Commissioner. AR 1-3. Plaintiff seeks judicial review of that decision.

## II. The ALJ's Decision

The ALJ followed the sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *see also* 20 C.F.R. § 416.920. The ALJ first determined Plaintiff met the insured status requirements of the SSA through December 31, 2014, and that she had not engaged in substantial gainful activity since the alleged onset date of March 1, 2011. AR 22. At step two, the ALJ found Plaintiff has the following severe impairments: "degenerative arthritis of right ankle; status post right ankle open reduction internal fixation." *Id.*; *citing* 20 C.F.R. 404.1520(c). At step three, the ALJ concluded Plaintiff's impairments, whether considered alone or in combination, do not meet or medically equal the severity of any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, App'x 1 (the Listings). AR 25. "After careful consideration of the entire record," the ALJ next determined Plaintiff has the residual functional capacity (RFC):

> to perform light work as defined in 20 CFR 404.1567(b) except the claimant is able to lift twenty pounds occasionally and carry, push, or pull ten pounds frequently. Throughout an eight-hour workday, the claimant is able to stand for the total of four hours, walk for the total of two hours, and sit for the total of six hours. The claimant is able to occasionally stoop, kneel, crouch, crawl, and climb stairs, but cannot climb ladders, ropes, or scaffolds. The claimant is able to infrequently balance and requires the use of a cane. The claimant must avoid all exposure to work at unprotected heights and around dangerous moving machinery.

AR 25. At step four, the ALJ found Plaintiff capable of performing her past relevant work (PRW) as a telephone order clerk, a sedentary position. AR 30. For this reason, the ALJ deemed Plaintiff "not disabled" within the meaning of §§ 216(i) and 223(d) of the SSA. AR 31.

### III. Plaintiff's Claims

Plaintiff first argues the ALJ erred at phase one of step four by granting little weight to the post-hearing report of consulting examiner S. A. Chaudry, M.D., and by relying on an allegedly stale medical opinion, which Plaintiff claims amounted to cherry-picking the record evidence. *See* Plaintiff's Brief at pp. 2-9. Due to these alleged errors, Plaintiff insists the RFC is not supported by substantial evidence. *Id.* Plaintiff further argues the ALJ erred at phases two and three of step four by delegating fact finding to the vocational expert (VE) and failing to make required findings concerning the demands of Plaintiff's PRW. *Id.* at pp. 11-14.

### IV. Standard of Review

"In reviewing the ALJ's decision, 'we neither reweigh the evidence nor substitute our judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (citation omitted). Judicial review of the Commissioner's final decision is limited to determining whether substantial evidence in the record as a whole supports the factual findings and whether the ALJ applied the correct legal standards. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). The Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citation omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (citation omitted).

## V. Factual Background

Plaintiff received a high school diploma in 1978 and cosmetology degree in 1985. AR 175. Her employment history includes work as a cashier, hair stylist, store clerk, and third-party coordinator for a mortgage company. *Id.*; AR 65-70, 175, 181-86. Plaintiff's most recent job was as a customer service representative for a telephone services company, a position from which she was terminated on December 31, 2009. AR 70, 175, 181. Fifteen months later, on March 17, 2011, Plaintiff fell from her front porch and fractured her right ankle. AR 43, 47. When she met with orthopedic surgeon Gene L. Muse, M.D., on March 21, 2011, Plaintiff described her occupation as "housewife." AR 272, 275.

On March 23, 2011, Dr. Muse performed open reduction internal fixation (ORIF) of Plaintiff's right trimalleolar fracture dislocation. AR 274. In the six-month period following the surgery, x-rays taken every four to eight weeks showed satisfactory position of the surgical hardware and union of the fracture fragments. AR 366-67, 370, 403, 476. Three weeks after surgery, Dr. Muse removed the splint and placed Plaintiff in a controlled ankle movement orthosis (CAM boot). AR 366. Eight weeks after surgery, Dr. Muse instructed Plaintiff to begin prescribed physical therapy. AR 367.

Fifteen weeks after surgery Plaintiff had yet to begin physical therapy. AR 370. In July, 2011, Dr. Muse discharged Plaintiff from using the CAM boot and directed her to begin partial weight-bearing. AR 370, 406. Despite this, once Plaintiff finally began physical therapy on August 2, 2011 – more than two months after Dr. Muse instructed her to do so – she repeatedly presented for her appointments using either a rolling walker or a wheelchair, neither of which Dr. Muse had prescribed. AR 406-07, 413, 415, 417, 436, 457. Plaintiff also admitted to using a rolling walker at home and not putting any weight on her right foot. AR 406-07, 413, 415, 438-

4

39, 441-42. In addition to this, Plaintiff cancelled or missed multiple physical therapy appointments. AR 414, 434-35, 452, 453-55, 459-63, 467.

On August 19, 2011, more than twenty weeks after surgery, nonexamining state agency medical consultant Walter W. Bell, M.D., completed a physical RFC assessment of Plaintiff. AR 377-84. As exertional limitations, Dr. Bell opined Plaintiff could lift, carry, push and/or pull ten pounds occasionally and less than ten pounds frequently and that, over the course of an eight-hour workday, she could stand and/or walk for at least two hours and sit for six hours. AR 378. Dr. Bell further determined Plaintiff required no postural, manipulative, visual, communicative, or environmental limitations. AR 379-81. On November 18, 2011, nonexamining state agency medical consultant Kenneth Wainner, M.D., affirmed Dr. Bell's RFC assessment. AR 432.

Plaintiff's reported symptoms improved as she continued physical therapy between August and December 2011. AR 412, 417, 436-37, 440, 445, 476. On October 27, 2011, Plaintiff informed the physical therapist that Dr. Muse had given her new orders "to do more balance, gait and strengthening now." AR 451. On December 5, 2011, the physical therapist noted "[t]he patient is using a single crutch with weight bearing as tolerated for community distances and is walking without any assistive device slowly for short distances in her home and in the PT gym (200 feet or less)." AR 464. But the physical therapist also noted Plaintiff "had self discharged from further physical therapy" and "refuse[d] further treatment." AR 464, 466.

On January 23, 2012, ten months after her surgery, Plaintiff returned to Dr. Muse for a follow-up visit. AR 477. She reported experiencing some swelling and dysesthesia toward the end of each day. *Id.* Dr. Muse observed Plaintiff "still walks with an antalgic gait to the right" but "no longer uses crutches," and that while "[h]er ankle is limited in plantar flexation and

5

dorsiflexion . . . she is able to do both." *Id.* He further noted that "[a]t this point in time, her wounds are well healed." *Id.*

Approximately one month later, Plaintiff presented to Patrick Garrison, Jr., M.D., for pain management. AR 469. During this initial visit, Plaintiff reported she was unable to walk on her own, had been on crutches for one year, and used a walker at home. *Id.* Dr. Garrison observed Plaintiff had poor range of motion in her right ankle. *Id.* At a follow-up visit March 26, 2012, Plaintiff reported that although she "[h]as used crutches and a walker for several months," "last week she walked around in Wal-Mart for 2 hours without crutches, walker or an electric buggy and no[w] is having severe left flank pain" as well as "some stinging pain through buttocks and down thigh." AR 473. On July 8, 2012, Plaintiff said she had been experiencing left shoulder pain and was unable to raise her left arm overhead. AR 482. Dr. Garrison's contemporaneous notes reveal that while Plaintiff's "[f]oot was still painful" with poor range of motion, Plaintiff stated it was "getting better" and that she was doing well with regard to lower back pain, too. *Id.* On September 23, 2012, Plaintiff informed Dr. Garrison she was still experiencing left shoulder pain but did not undergo a recommended MRI due to the cost. AR 485. She further reported suffering recurrent pain and spasms in her left lower back and swelling in her left knee. *Id.* When Plaintiff next met with Dr. Garrison nine months later, on June 20, 2013, he observed she had better range of motion and less pain in her left shoulder and was able to raise her left arm parallel to the ground. AR 486. Plaintiff reported she walked with a cane. *Id.* Dr. Garrison noted Plaintiff "has no range of motion in ankle and unable to drive due to this." AR 487. Three months later, Plaintiff told Dr. Chaudry she does not have a driver's license. AR 496.

Plaintiff arrived at the September 3, 2013 administrative hearing using a four-prong cane. AR 45. Board-certified orthopedic surgeon, Donald Plowman, M.D., testified as an impartial medical expert and opined Plaintiff could lift twenty pounds frequently but carry only ten pounds occasionally with one hand. AR 27, 49-50. Dr. Plowman further opined that in an eight-hour workday Plaintiff could walk for two hours and stand for four, with no sitting limitations. AR 50. As for postural limitations, Dr. Plowman ruled out ladders, scaffolds, and working near hazardous machinery or unprotected heights. *Id.* He stated Plaintiff could use stairs occasionally as long as there was a hand rail and that she was able to kneel, crouch, and crawl frequently but squat only occasionally. *Id.* He assessed no limitations with regard to Plaintiff's upper-extremity manipulative functions. AR 49-50. Dr. Plowman suggested a new x-ray of Plaintiff's ankle was warranted because the most recent scan was over two-and-a-half years old. AR 54. In so doing, he stated "I don't know how much that would change the [RFC] though," but that it "could possibly change the limitations with her walking and standing." AR 54-55.

For her part, Plaintiff testified her ankle stays bruised and discolored at all times; swells within twenty minutes of standing; swells and aches when she is seated unless she elevates it; and that when anything hits or touches the visible hardware it causes her "excruciating pain." AR 57-58. Plaintiff declared she can bend and move her toes and put some weight on her foot, but that she has very little range of motion in her ankle and cannot balance herself. *Id.* Plaintiff stated she can shop in a grocery store if she uses a cart. AR 60. Plaintiff testified she takes pain medication, muscle relaxers, and uses an anti-inflammatory collagen gel. *Id.* She acknowledged the pills relieve some of the pain, but said they cause her thinking to be less clear and make her extremely emotional. *Id*. Plaintiff also testified the range of motion in her left shoulder has improved to the point where she is able to hold her left arm parallel to the ground but that she

remains unable to carry any weight on her left side. AR 61-62. She further stated that because the condition of her ankle renders her unable to squat, she can no longer do the core-strengthening exercises that kept her back in such good shape following the two discectomies she had in the early 1990's and that her back hurts constantly as a result. AR 62-63; 489.

The VE testified that Plaintiff's most recent job as an order clerk was a sedentary, semi-skilled position with an SVP of 4.[1] *See* DOT 249.362-026.[2] AR 70-71. The ALJ asked the VE to consider an individual with the following work-related limitations: lift twenty pounds occasionally but carry, push, or pull a maximum of ten pounds; stand four hours, walk two hours,

---

[1] SVP is the acronym for "specific vocational preparation." The Dictionary of Occupational Titles (DOT) assigns an SVP time for each occupation described therein. "Unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." *See* SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000).

[2] The DOT defines an order clerk as one who:

> [p]rocesses orders for material or merchandise received by mail, telephone, or personally from customer or company employee, manually or using computer or calculating machine: Edits orders received for price and nomenclature. Informs customer of unit prices, shipping date, anticipated delays, and any additional information needed by customer, using mail or telephone. Writes or types order form, or enters data into computer, to determine total cost for customer. Records or files copy of orders received according to expected delivery date. May ascertain credit rating of customer . . . . May check inventory control and notify stock control departments of orders that would deplete stock. May initiate purchase requisitions. May route orders to departments for filling and follow up on orders to ensure delivery by specified dates and be designated Telephone-Order Dispatcher (clerical). May compute price, discount, sales representative's commission, and shipping charges. May prepare invoices and shipping documents, such as bill of lading . . . . May recommend type of packing or labeling needed on order. May receive and check customer complaints . . . . May confer with production, sales, shipping, warehouse, or common carrier personnel to expedite or trace missing or delayed shipments. May attempt to sell additional merchandise to customer . . . . May compile statistics and prepare various reports for management. May be designated according to method of receiving orders as Mail-Order Clerk (clerical); Telephone-Order Clerk (clerical). GOE: 07.05.03 STRENGTH: S GED: R3 M3 L3 SVP: 4 DLU: 88.

and sit six hours in an eight-hour workday; with no ladders, ropes, or scaffolds and only occasional use of stairs; who required the use of a cane and could stoop, kneel, crouch, or crawl occasionally and balance only infrequently; and could not be exposed to heights or dangerous moving machinery. AR 71-72. When the ALJ asked whether such a hypothetical person would be able to perform any of Plaintiff's PRW, the VE responded affirmatively, saying an individual with those limitations would be able to do the job of telephone order clerk. AR 72. When the ALJ further restricted the individual to being able to lift, carry, push, or pull only ten pounds occasionally and less than that frequently, the VE again testified such a person would be able to work as a telephone clerk. *Id*. When the ALJ altered the hypothetical yet again, this time limiting the individual to standing a total of two rather than four hours in an eight-hour workday, the VE again confirmed a person so limited would be able to do Plaintiff's PRW as a telephone order clerk. *Id.*

One month after the hearing, Plaintiff visited with S. A. Chaudry, M.D., a consultative examiner (CE), who x-rayed her right ankle and conducted a physical examination. AR 489. Dr. Chaudry then completed a form entitled "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" (MSS). AR 492-502. In his letter accompanying the MSS, Dr. Chaudry included the following observations about the condition of Plaintiff's health:

- "Range of motion of flexion, extension, rotation and lateral movements" in lumbrosacral spine was "painful with paraspinous, muscular tenderness."

- "Zero range of motion of plantar flexion and dorsiflexion" in right ankle.

- Ability to achieve heel and toe walking on the left side but "[g]ait is slow, assisted [by] a cane."

- Extremities revealed "[n]o edema or clubbing" and "[n]o acute joint swelling, tenderness, or effusion."

9

- Ability to "button and unbutton, pick up piece of paper, and tear it up with no difficulty. Fine and gross manipulative movements of the hand and fingers are normal and intact. Grip strength in both hands normal, 5/5."

AR 489-91. Dr. Chaudry further stated the x-ray of Plaintiff's right ankle revealed osteophyte formation and diminished bony mineralization, and that he had diagnosed Plaintiff with degenerative arthritis as a result. AR 491.

On the MSS itself, Dr. Chaudry limited Plaintiff to lifting ten pounds occasionally but never carrying anything. AR 492. He indicated Plaintiff was able to sit or stand for twenty minutes at a time without interruption but walk for only five minutes, and classified Plaintiff's use of a cane as medically necessary. AR 493. During an eight-hour work day, Dr. Chaudry assessed Plaintiff as able to sit for six hours, stand for one, and walk for one. *Id.* He further assessed Plaintiff as able only occasionally to reach, handle, finger, feel, push, or pull with either hand, but never to reach overhead with her left. AR 494. Dr. Chaudry indicated Plaintiff could never operate foot controls on the right and do so only occasionally on the left. *Id.* He further concluded Plaintiff could never climb stairs, ramps, ladders, or scaffolds; never stoop, kneel, crouch, or crawl; and only occasionally balance. AR 495. Despite these limitations, Dr. Chaudry concluded Plaintiff retained the ability to do a variety of daily activities including using standard public transportation; ambulating without a wheelchair, walker, two canes, or two crutches; shopping; preparing simple meals; feeding herself; caring for her personal hygiene; and sorting, handling, and using paper and/or files. *Id*.

## VI.   Analysis

### A.   The ALJ Properly Considered Dr. Chaudry's Medical Opinion

Plaintiff contends the ALJ erred in granting little weight to the medical opinion of Dr. Chaudry. *See* Plaintiff's Brief at p. 2. Plaintiff insists the ALJ should have subjected Dr.

Chaudry's opinion to the same two-part inquiry that applies to the medical opinions of treating physicians,[3] namely, that if the opinion is "well-supported and not inconsistent with the other substantial evidence in the case record," the ALJ must give it controlling weight. *Id.*; *see* Social Security Ruling (SSR) 96-2p, 1996 WL 374188 at *1 (July 2, 1996); 20 C.F.R. § 416.927(c)(2). But, as Plaintiff acknowledges, Dr. Chaudry is a consultative examiner (CE), not a treating physician. *See* Plaintiff's Brief at p. 2. His medical opinion, therefore, is not subject to the two-part, treating-source test. Plaintiff cites no statutes, regulations, or case law to the contrary.

Even though Dr. Chaudry was not one of Plaintiff's treating physicians, the ALJ was nonetheless required to consider his medical opinion. *See* 20 C.F.R. § 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive"); SSR 96-5p, 1996 WL 374183, at *1 ("[O]pinions from any medical source about issues reserved to the Commissioner must never be ignored . . . ."). "An opinion found to be an examining rather than treating medical-source opinion may be dismissed or discounted, of course, but that must be based on an evaluation of all of the factors set out in the cited regulations and the ALJ must 'provide specific, legitimate reasons for rejecting it.'" *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012), (*quoting Doyal*, 331 F.3d at 764).

---

[3] The applicable regulations define a treating source as a claimant's "own physician, psychologist, or other acceptable medical source" who has provided the claimant "with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 416.902. Generally, the Commissioner will consider a claimant to have the requisite ongoing treatment relationship if the claimant has seen the medical source "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required" for the claimant's medical condition. *Id.* If a claimant's relationship with the medical source is based "solely on [his or her] need to obtain a report in support of [his or her] claim for disability," the Commissioner will not consider the medical source to be the claimant's treating source. *Id.*; *see Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003). Here, Dr. Chaudry does not qualify as a treating source because he examined Plaintiff on only one occasion and for the limited purpose of evaluating a new x-ray of Plaintiff's right ankle and assessing her current range of motion as ordered by the ALJ. AR 28, 54-55, 489.

The applicable regulations provide that in evaluating medical opinions, the ALJ must consider the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the types of examination or testing performed; (3) the degree to which the opinion is supported by relevant evidence; (4) the degree to which the opinion is consistent with the record evidence as a whole; (5) whether the source is a specialist whose opinion involves medical issues related to that specialty; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. 20 C.F.R §§ 404.1527, 416.927; *McDonald v. Astrue*, 492 F. App'x 875, 882, 2012 WL 2989935 at *6 (10th Cir. July 23, 2012) (unpublished) ("Supportability – the extent to which a medical source presents relevant evidence to support an opinion – and consistency with the record are two factors relevant to the weight that an ALJ gives to a medical opinion from any source.").

Here the ALJ expressly stated she carefully considered the entire record. AR 25. *See Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (noting the well-established principle of taking ALJ at her word when she indicates she considered all of the evidence). Moreover, the text of the disability determination reveals the ALJ not only considered Dr. Chaudry's opinion, but also analyzed it in detail, pointing out several of its internal contradictions in explaining why she afforded it little weight. AR 29. The inconsistencies the ALJ noted include the fact that even though contemporaneous physical examination revealed Plaintiff suffers no manipulative deficits and no range-of-motion reductions for either shoulder, Dr. Chaudry nevertheless recommended limiting Plaintiff to reach, handle, finger, feel, push, and pull only occasionally with either hand and never to reach overhead on the left. *Id.*; *compare* AR 490-91 & 500 *with* AR 494. In addition, despite determining Plaintiff was unable to operate foot controls on the

right and could do so only occasionally on the left, Dr. Chaudry did not preclude Plaintiff from the activity of driving; he merely indicated she did not have a driver's license. AR 29, 496. More importantly, even though Dr. Chaudry expressly affirmed Plaintiff retained the ability to shop, use standard public transportation, prepare meals, feed herself, and care for her personal hygiene, as well as to sort, handle, and use paper and/or files, he went on to claim Plaintiff's "backache and right ankle pain interferes with her daily activities." AR 29, 497. In light of these discrepancies, the ALJ concluded Dr. Chaudry's opinion was both unsupported by his own physical findings upon contemporaneous examination of Plaintiff and inconsistent with other record medical evidence.[4] AR 29; *see Newbold v. Colvin*, 718 F.3d 1257, 1266 (10th Cir. 2013) (holding ALJ properly discounted physician's opinion that conflicted with his contemporaneous report that claimant could take care of herself and perform her activities of daily living); *Doyal*, 331 F.3d at 764 (holding ALJ properly discounted examining source opinion as inconsistent with record evidence as a whole). Thus, the ALJ provided specific, legitimate reasons for affording little weight to Dr. Chaudry's opinion. Plaintiff has failed to show reversible error.[5]

---

[4] Because the CE did not testify at the hearing, Plaintiff makes much of the ALJ's statement that, "[a]s Dr. Chaudry has repeatedly testified, it appears that once again, he completed the form based solely on what the claimant told him." AR 29; *see* Plaintiff's Brief at pp. 3-4. If the ALJ's sole justification for assigning little weight to Dr. Chaudry's medical opinion had been her assumption the CE had done nothing more in assessing Plaintiff's limitations than recite Plaintiff's subjective complaints, Plaintiff might have a point. But, as discussed above, the ALJ provided multiple, evidence-based reasons for discounting Dr. Chaudry's opinion.

[5] To the extent Dr. Chaudry did base his opinion on Plaintiff's subjective complaints, it is important to note the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms to be "not entirely credible." AR 26. Plaintiff does not challenge the ALJ's assessment of her credibility and has thus waived the issue. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those [of claimant's] contentions that have been adequately briefed for our review.") (*citing Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004).

### B. The ALJ Did Not Improperly "Cherry-Pick" the Medical Evidence

Plaintiff contends that by giving little weight to Dr. Chaudry's medical opinion, the ALJ effectively ignored both the updated x-ray of Plaintiff's right ankle and the related diagnosis of degenerative arthritis. *See* Plaintiff's Brief at pp. 7-9. Plaintiff argues that, in so doing, the ALJ cherry-picked the evidence, improperly relying on only those aspects of the record favorable to a finding of nondisability. *Id.* at p. 8, *quoting Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004). That the ALJ did not ignore Plaintiff's x-ray results and arthritis diagnosis is readily apparent from the face of the disability determination, however. First, the ALJ summarized Dr. Plowman's hearing testimony in part as follows:

> He reviewed the single progress note of Dr. Garrison who found no motion of the ankle, but testified the report and notations are not entirely clear and that something besides the hardware screws may be causing ankle problems. Dr. Plowman agreed that an updated examination would also be helpful to document current ranges of ankle motion, as well as obtaining current x-rays.

AR 28. The ALJ then expressly discussed the post-hearing x-ray, saying it revealed "[p]late and screw were present over the tibial-fibula and talus with loss of joint spaces and osteophyte formation over terminal tibia and talus. Dr. Chaudry's impression was degenerative arthritis with arthrodesis." AR 29. Moreover, had the ALJ ignored this new evidence as Plaintiff claims, she would not have included "degenerative arthritis of right ankle" as one of Plaintiff's severe impairments at step two because it was the new x-ray and Dr. Chaudry's interpretation thereof that first established the existence of that impairment. AR 22. In any event, Plaintiff does not point to any additional limitations warranted by her degenerative arthritis diagnosis that either Dr. Plowman failed to suggest or the ALJ failed to include in the RFC. For these reasons, Plaintiff's claim the ALJ cherry-picked stale evidence in formulating the RFC is without merit.

## C. The ALJ Did Not Err in Failing to Make Specific Findings Regarding the Demands of Plaintiff's Past Relevant Work as Actually Performed

In *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996), the Tenth Circuit set forth the three-phase analysis an ALJ must undertake at step four: (1) assess the claimant's RFC; (2) determine the physical and mental demands of the claimant's PRW; and (3) decide whether the claimant has the ability to perform his PRW despite his RFC. *See* SSR 82-62, 1982 WL 31386, at *2-3. The ALJ must make specific findings at each of these three phases. *See Winfrey*, 92 F.3d at 1023 (*citing Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993)). Plaintiff argues the ALJ erred at the second phase of step four "by failing to make required findings regarding [her] PRW, and instead delegating this task to the VE." *See* Plaintiff's Brief at 11-12.

According to Plaintiff, the disability determination "runs afoul" of the *Winfrey* decision, which holds an ALJ "must make findings regarding the physical and mental demands of the claimant's past relevant work" by "obtain[ing] adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (*quoting* SSR 82-62, 1982 WL 31386 (1982) at *3). Because the ALJ's decision does not contain a listing of the particular duties involved in Plaintiff's PRW as a telephone order clerk as she actually performed them, Plaintiff argues it is not based on substantial evidence. This argument ignores the fact that if an ALJ's analysis at step four reveals a claimant retains the RFC to perform *either* "[t]he actual functional demands and job duties of a particular past relevant job" *or* "[t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy," then the claimant will be found to be nondisabled. SSR 82-61, 1982 WL 31387, at *2; *see Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d

1045, 1051 (10th Cir. 1993) (holding PRW includes not only claimant's particular former job, but also claimant's former occupation as it is generally performed in the national economy).

An ALJ is permitted to rely upon the descriptions in the DOT and/or the testimony of a VE in determining the demands of a claimant's PRW as it is generally performed in the national economy. *See* 20 C.F.R. § 416.960(b)(2). Here, the ALJ permissibly relied on the testimony of the VE in deciding Plaintiff's PRW is that of "order clerk (249.362-026)." AR 30, 70-71. By citing the specific DOT entry for order clerk, which classifies that occupation as sedentary and sets forth its specific demands,[6] the ALJ incorporated that agency-approved source by reference in her decision. *See Hawkins v. Colvin*, 2015 WL 9312102, at *2 (W.D. Okla. Dec. 1, 2015) (holding ALJ's reference to the DOT descriptions of plaintiff's prior jobs served to incorporate that source by reference); *Campbell v. Astrue*, 525 F.Supp.2d 1256, 1264 (D. Kan. 2007) (same). This served adequately to establish the ALJ's specific findings regarding the demands of Plaintiff's PRW at phase two of step four. *See Parise v. Astrue*, 421 F. App'x 786, 789 (10th Cir. 2010) (holding phase-two finding sufficient where ALJ did not make specific findings regarding claimant's PRW but referenced the pertinent DOT job listing).

Given that the ALJ's phase-two finding is sufficient to establish the demands of Plaintiff's PRW as it is generally performed, her failure to delineate the demands of Plaintiff's PRW as actually performed warrants neither remand nor reversal where, as here, the ALJ stated she made her decision after "careful consideration of the entire record." AR 25; *see Roland v. Colvin*, 2015 WL 1508317, at *3 (W.D. Okla. March 31, 2005) (unpublished) (holding that to the extent the ALJ's failure to expressly cite in his decision record evidence of Plaintiff's own description of his PRW was error, such error was harmless where the ALJ stated he had carefully

---

[6] *See* DOT 249.362-026, *supra*, note 2.

16

considered all record evidence); *see also Best-Willie v. Colvin,* 514 F. App'x 728, 738, 2013 WL 1208452 at *8 (10th Cir. March 26, 2013) (unpublished) ("The record supports the ALJ's conclusion, and the ALJ's failure to expressly cite evidence in support does not constitute error. The ALJ stated that she carefully considered all evidence in the record and we take her at her word." (*citing Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)). Thus, Plaintiff's contention that it was error for the ALJ to fail to make specific findings regarding the demands of her PRW as an order clerk as she actually performed is without merit.

D. **Substantial Evidence Supports the ALJ's Finding Plaintiff Has the Ability to Perform Her PRW as Order Clerk Despite Her RFC**

Plaintiff argues the ALJ's alleged failure to conduct an appropriate analysis of her PRW at phase two "naturally compromised" the ALJ's phase-three finding Plaintiff retains the ability to perform her PRW despite her RFC. *See* Plaintiff's Brief at p. 13. First, as discussed above, the analysis the ALJ conducted at phase two was legally sufficient; therefore, her phase-three conclusions were not corrupted thereby. Second, the hypothetical questions the ALJ posed to the VE provided an appropriate basis for a denial of benefits because they "included all the limitations the ALJ ultimately included in his RFC assessment." *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000); *citing Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993); *compare* AR 25 *with* AR 71-73. Based on those inquiries, the VE testified Plaintiff could still perform her PRW as an order clerk. *Id*. Plaintiff, who bears the burden of proof at step four, points to no work-related limitation caused by her impairments that the ALJ improperly omitted from the hypotheticals. Moreover, the ALJ's assessment of Plaintiff's RFC was "inherently intertwined" with her less-than-favorable determination of Plaintiff's credibility, a determination Plaintiff does not challenge here. *Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir. 2009). It follows

that substantial evidence exists to support the ALJ's determination Plaintiff is capable of performing her PRW as an order clerk despite the limitations of her RFC.

## RECOMMENDATION

For the foregoing reasons, it is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. Any objection must be filed with the Clerk of the District Court by July 25, 2016. Failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 11th day of July, 2016.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE